[993 NYS2d 741]

In the Matter of ANNETTE MARIE TOTTEN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 8, 2014

## APPEARANCES OF COUNSEL

*Robert A. Green,* Hauppauge (*Daniel M. Mitola* of counsel), for petitioner.

*Long, Tuminello, Besso, Seligman, Werner, Sullivan & Aulivola, LLP,* Bay Shore (*David Besso and Michelle Aulivola* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated June 28, 2012, containing four charges of professional misconduct arising from the respondent's representation of Mr. and Mrs. Raleigh Trent (hereinafter together the Trents) in their sale of real property, and the respondent's failure to promptly respond to inquiries from the Grievance Committee. A related disciplinary proceeding was commenced against attorney Wanda Roberts Brown, a co-purchaser of the Trents' real property (*see Matter of Brown,* 123 AD3d 108 [2014] [decided herewith]). Following hearings conducted on June 5, 2013 and August 14, 2013, the Special Referee issued a report, which sustained charges one and four, but did not sustain charges two and three. The Grievance Committee now moves to confirm in part, and disaffirm in part, the report of the Special Referee, and to impose such discipline on the respondent as the Court deems appropriate. The respondent, by her attorney, opposes the Grievance Committee's motion, and cross-moves to confirm in part, and disaffirm in part, the Special Referee's report.

Counsel for the respondent also requests that, if any sanction is imposed against the respondent, it be limited to a private sanction. We find that the Special Referee properly sustained charges one and four. However, we find that the Special Referee improperly declined to sustain charges two and three, and that charges two and three should have been sustained, based upon the evidence adduced at the hearings.

Charges one through three emanate from a common set of facts. Based upon the respondent's admissions, her sworn testimony, and the evidence adduced, we find those facts are as follows:

In January 2006, the respondent was retained to represent the Trents, residents of Virginia, in the sale of their former residence located at 32 Grove Street, Riverhead, New York (hereinafter the Riverhead property). The respondent had known the Trents all her life, as they previously resided in the same Riverhead community, she attended school with the Trents' children, and they worshiped at the same church. The purchasers were Wanda Roberts Brown and Mark Vandeventer (hereinafter together the purchasers). Brown is the respondent's mother, and an attorney licensed to practice law in the State of New York. At the time of this transaction, the respondent and Brown lived at the same residence.

Prior to the Trents' retention of the respondent, the terms of the transaction were negotiated between Mr. Trent and the purchasers. At the time, the Riverhead property was unencumbered by any mortgages, but was subject to a claim for unpaid real estate taxes in the sum of approximately $20,000. The respondent did not prepare the contract of sale (hereinafter the contract), which was, instead, forwarded to her by the purchasers. The contract provided for a total purchase price of $82,500, to be satisfied by a $5,000 down payment and a $77,500 seller-financed loan evidenced by a promissory note. The purchasers were also responsible for paying the delinquent real estate taxes. The preprinted contractual provisions requiring that the promissory note was to be secured by a mortgage had already been crossed out at the time the respondent received the contract. The respondent neither proposed, nor made, any changes to the contract, and sent it to the Trents, unmodified, together with the necessary power of attorney forms so that she could represent them at the closing as their attorney-in-fact.

Notwithstanding the respondent's knowledge of the Trents' limited reading proficiency, when the respondent discussed the

contract with the Trents, she simply confirmed that the Trents were "comfortable" with the terms of the contract. On or about January 17, 2006, the Trents executed the contract, without modification, and had their signatures notarized on the power of attorney forms in Virginia. The contract and the power of attorney forms were returned to the respondent prior to the closing.

At the closing on February 14, 2006, the purchasers executed the aforementioned promissory note, evidencing the seller-financed purchase money loan in the amount of $77,500. The respondent, as attorney-in-fact for the Trents, executed a deed conveying the Riverhead property to the purchasers. In accordance with the contract, no mortgage or other instrument securing repayment of the promissory note was executed, delivered, or recorded.

Several months later, on May 10, 2006, Brown deeded her interest in the Riverhead property to her co-purchaser, Mark Vandeventer. On that same date, Vandeventer obtained a loan in the sum of $156,000 from Wells Fargo Bank, NA, and gave that bank a mortgage that was recorded against the Riverhead property. The unsecured promissory note to the Trents was not satisfied at that time.

Approximately nine months later, on or about February 28, 2007, Vandeventer obtained another loan, in the sum of $260,000, from Fremont Investment and Loan, and gave another mortgage against the Riverhead property. The Wells Fargo loan was satisfied at that time, but the promissory note in favor of the Trents was not.

On or about October 31, 2008, Vandeventer filed for bankruptcy, listing the unsecured promissory note to the Trents as an obligation. Vandeventer's unsecured debt to the Trents was discharged in bankruptcy. The Trents never received the consideration for their Riverhead property contemplated by the unsecured promissory note.

Charge one alleges that the respondent is guilty of failing to provide competent representation to the Trents, in violation of former Code of Professional Responsibility DR 6-101 (22 NYCRR 1200.30).

Charge two alleges that the respondent represented the Trents when there was a significant risk that her professional judgment on their behalf was adversely affected by the interests of another, in violation of former Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]).

Charge three alleges that the respondent engaged in conduct that adversely reflects on her fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge four alleges that the respondent failed to promptly respond to the legitimate inquiries of the Grievance Committee, which is conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), as follows:

In or about February 2009, an investigation was commenced by the Grievance Committee arising from a complaint filed on behalf of the Trents. After the receipt of the respondent's initial answer to the complaint, the Grievance Committee learned that civil litigation relating to the respondent's representation of the Trents in connection with the sale of the Riverhead property had been initiated. By letter dated May 15, 2009, the respondent was notified that the grievance investigation was being held in abeyance pending the outcome of the civil litigation, or until further notice.

By letter dated March 16, 2010, the Grievance Committee requested the respondent to provide it with the status of the foregoing civil litigation within 10 days. The Grievance Committee received no response. After making a second request, the Grievance Committee received a reply dated April 6, 2010 from the respondent.

By letter dated January 20, 2011, the respondent was requested to provide the Grievance Committee with the updated status of the civil litigation within 10 days. The Grievance Committee received no response. An additional request for the status of the civil litigation was made to the respondent by letter dated February 8, 2011. The Grievance Committee received no response. After making yet another request, the Grievance Committee received a reply dated March 11, 2011 from the respondent.

By letter dated July 26, 2011, the respondent was requested to provide the Grievance Committee with a further updated status of the civil litigation within five days. The Grievance Committee received no response. A followup request for the status of the civil litigation was made to the respondent by letter dated September 15, 2011. The Grievance Committee received no response. After making an additional request, the Grievance Committee received a reply dated October 6, 2011 from the respondent.

We find that, when the respondent represented the Trents in the foregoing transaction, her professional experience was principally in criminal law, and she had limited experience in real estate transactions. Notwithstanding the respondent's knowledge of the Trents' limited reading proficiency, she did not insure that they understood what was at stake in the absence of security for the seller-financed loan. The Special Referee found, and we agree, that "the terms of sale were . . . seriously skewed" against the Trents, and that the respondent never explained the inherent risks of the transaction to them. Although the respondent's testimony indicates that she may not have fully understood the seller financing clause, the unusual and unfamiliar terms of this transaction should have signaled a need for the respondent to consult an attorney with greater experience in real estate transactions. The respondent's failure to appreciate the inherent risk in an unsecured, seller-financed transaction, or to seek assistance from a more experienced attorney, put her clients at risk for the substantial financial loss that ultimately occurred. Consequently, we find, based upon a preponderance of the evidence, that the respondent failed to provide competent legal representation to her clients, which conduct adversely reflects on her fitness as a lawyer.

In light of the respondent's familial relationship with Brown, one of the co-purchasers of the Riverhead property, we further find that the respondent had a conflict of interest with respect to her representation of the Trents. Although the Trents may have known that the respondent was related to Brown, the respondent failed to establish: (1) that a disinterested lawyer would reasonably believe the conflict would not adversely affect the respondent's representation, and/or (2) that the Trents received full disclosure of the implications of the respondent's conflicting personal interests.

Finally, we find that the respondent engaged in conduct which is prejudicial to the administration of justice by failing to promptly respond to inquiries from the Grievance Committee concerning the status of the civil litigation relating to her representation of the Trents in the sale of the Riverhead property.

Based upon the respondent's admissions, her sworn testimony, and the other evidence adduced at the hearings, the Grievance Committee's motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted, and the respondent's cross motion to confirm in part, and disaffirm in part, the Special Referee's report is denied, and charges one through four are sustained.

In determining an appropriate measure of discipline to impose, we note that this was an isolated incident, which occurred not long after the respondent's admission to practice law, and that the respondent received no personal benefit. We have considered the mitigation offered by the respondent, including the testimony of her character witnesses as to her integrity and reputation for excellence, her remorse for the mistakes she made and their effect upon her clients, the substantial contributions she has made to her community, the medical infirmities that contributed to her delay in responding to the requests of the Grievance Committee, and her previously unblemished record.

Under the circumstances of this case, including the aforementioned mitigating circumstances, we find that a public censure is warranted.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted, the respondent's cross motion to confirm in part, and disaffirm in part, the report of the Special Referee is denied, and charges one through four are sustained; and it is further,

Ordered that the respondent, Annette Marie Totten, is publicly censured for her misconduct.