[993 NYS2d 736]

In the Matter of WANDA ROBERTS BROWN (Admitted as WANDA TOTTEN ROBERTS), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 8, 2014

**APPEARANCES OF COUNSEL**

*Robert A. Green*, Hauppauge (*Daniel M. Mitola* of counsel), for petitioner.

*J. Stewart Moore*, Central Islip, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition dated June 19, 2012, containing two charges of professional misconduct arising from a real estate transaction wherein she purchased real property from Mr. and Mrs. Raleigh Trent, who were represented in the transaction by the respondent's daughter, Annette Marie Totten. A related disciplinary proceeding was commenced against Annette Marie Totten (*see Matter of Totten*, 123 AD3d 118 [2014] [decided herewith]). Following a hearing conducted on August 19, 2013, the Special Referee issued a report which sustained charge two, but did not sustain charge one. The Grievance Committee now moves to confirm in part, and disaffirm in part, the Special Referee's report, and to impose such discipline on the respondent as this Court deems appropriate. The respondent, by her attorney, has submitted a response requesting that the Grievance Committee's motion be denied in full, and that no discipline be imposed. In the event that the Court sustains any charge, the respondent requests that no disciplinary sanction be imposed that would preclude her from practicing law. We find that the Special Referee properly sustained charge two. However, we find that the Special Referee improperly declined to sustain charge one, and that charge one should have been sustained, based upon the evidence adduced.

Charges one and two emanate from a common set of facts. Based upon the respondent's admissions, her sworn testimony, and the evidence adduced, we find those facts are as follows:

After studying a real estate investment course, the respondent, an experienced attorney-at-law, entered into a business partnership with a non-lawyer, Mark Vandeventer (hereinafter Vandeventer), aimed at investing in distressed properties. While searching for a suitable investment, the respondent learned of a potential property, which was owned by her friends, Mr. and Mrs. Raleigh Trent (hereinafter the Trents), residents of Virginia. The subject property was the Trents' former residence, located at 32 Grove Street, Riverhead, New York (hereinafter the Riverhead property). The respondent had known the Trents almost all of her life, as they previously resided in the same Riverhead community, she attended school with the Trents' children, the respondent's mother worked with the Trents, and they worshiped at the same church. In contrast, Vandeventer was a relatively new acquaintance, whom the respondent met sometime in 2005.

In or about January 2006, the respondent and Vandeventer entered into negotiations with Mr. Trent to purchase the Riverhead property. At that time, the Riverhead property was not encumbered by any mortgage, but there were approximately $20,000 in tax arrears. No appraisal was conducted to determine the fair market value of the Riverhead property. Moreover, the Trents were not represented by counsel when the terms of the transaction were negotiated. The respondent acknowledges that Mr. Trent had limited experience in legal matters. Ultimately, the terms of the sale provided for a total purchase price of $82,500, consisting of a $5,000 down payment and a $77,500 seller-financed loan, evidenced by an unsecured promissory note. The purchasers were also required to pay the delinquent real estate taxes.

After the terms of the sale were negotiated, the Trents retained the respondent's daughter, Annette Marie Totten (hereinafter Ms. Totten), to represent them in the sale. Although Ms. Totten was the sellers' attorney, she did not draft the contract of sale (hereinafter the contract), which was forwarded to her by the purchasers. Ms. Totten neither proposed, nor made, any changes to the contract before forwarding it to her clients in Virginia. The Trents executed the contract as it was presented to them, without modification.

The Trents did not attend the closing. Rather, they authorized Ms. Totten to act as their attorney-in-fact, pursuant to

power of attorney forms, which they executed. At the closing on February 14, 2006, the respondent and Vandeventer executed the aforementioned promissory note in favor of the Trents, evidencing the seller-financed purchase money loan of $77,500. Ms. Totten thereupon executed a deed conveying the Trents' Riverhead property to the respondent and Vandeventer. In accordance with the contract, no mortgage or other instrument securing repayment of the foregoing promissory note was executed, delivered, or recorded.

Within three months, on May 10, 2006, the respondent ended her business partnership with Vandeventer, deeded her interest in the Riverhead property to him, and received a personal check from him in the sum of $40,000. That same day, Vandeventer secured a loan in the amount of $156,000 from Wells Fargo Bank, NA, and a mortgage was given and recorded against the Riverhead property. The promissory note in favor of the Trents was not satisfied at that time.

On or about February 28, 2007, Vandeventer obtained a further loan in the amount of $260,000 from Fremont Investment and Loan, which was secured by another mortgage on the Riverhead property. At that time, the Wells Fargo loan was satisfied. However, the promissory note in favor of the Trents was not.

On or about October 31, 2008, Vandeventer filed for bankruptcy, listing the unsecured promissory note to the Trents as an obligation. Vandeventer's unsecured debt to the Trents was discharged in bankruptcy.

Notwithstanding the transfer of her interest in the Riverhead property to Vandeventer, the respondent admittedly remained responsible for the debt to the Trents. However, she has never honored her obligation under the unsecured promissory note, and the Trents have never received the consideration for their Riverhead property contemplated by the unsecured promissory note.

Charge one alleges that the respondent engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge two alleges that the respondent engaged in conduct which adversely reflects on her fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Although the respondent asserts that she had no professional duty towards the sellers, inasmuch as her role in this transaction was limited to that of co-purchaser of real property, the respondent nonetheless may be disciplined for misconduct committed "outside of and not a part of [her] professional acts" (*Matter of Dolphin*, 240 NY 89, 93 [1925]; *see Matter of Nixon*, 53 AD2d 178 [1976]; 22 NYCRR 691.2).

We find that the respondent's relationship with her long-standing friends, the Trents, created the essential element of trust necessary to consummate the sale. Indeed, the respondent, an experienced attorney, negotiated the terms of the sale with Mr. Trent, an individual with limited experience in legal matters, prior to his retention of legal counsel. In doing so, the respondent deceptively secured disproportionately favorable terms that enabled her to purchase the Riverhead property without any financial contribution, and without disclosing to Mr. Trent the significant risk of loss if the seller-financed loan went unpaid. Moreover, shortly after obtaining title to the Riverhead property, the respondent knowingly released her interest in that property, in exchange for $40,000, without ever satisfying the promissory note to the Trents. Despite having made no financial contribution towards this transaction, the respondent personally profited. Further, her actions enabled Vandeventer to secure multiple loans on the Riverhead property, and directly contributed to the substantial financial loss sustained by the Trents.

Attorneys are held to a higher standard than non-attorneys in connection with their personal dealings. " 'While a lawyer may engage in business, if he [or she] wishes to remain a member of the Bar he [or she] must conduct himself [or herself] in that business in accordance with the standards imposed on members of the Bar' " (*Matter of Ushkow*, 34 AD2d 159, 161 [1970], quoting *Matter of Kaufman*, 29 AD2d 298, 299 [1968]). Indeed, an attorney's actions should not "be measured by the standards of the marketplace alone. His [or her] conduct, while in some instances not involving an attorney-client relationship, [reflects] on the reputation of the Bar" (*Matter of Madera*, 39 AD2d 202, 205 [1972]).

We find that the respondent knowingly engaged in conduct involving dishonesty, deceit, fraud, or misrepresentation, by her participation in the business investment in the Trents' Riverhead property, which conduct adversely reflects on her fitness as a lawyer. Accordingly, the Grievance Committee's motion to

confirm in part, and disaffirm in part, the report of the Special Referee is granted.

In determining an appropriate measure of discipline to impose, the Court has considered the mitigation evidence offered by the respondent, including the testimony of her character witnesses as to her integrity and reputation for excellence; her expression of remorse; the contributions she has made to her community and the not-for-profit organization she serves; and her previously unblemished record. Notwithstanding the evidence in mitigation, we find that the respondent's conduct warrants her suspension from the practice of law for a period of one year. Additionally, we find that the respondent's future reinstatement to the practice of law should be conditioned upon satisfaction of her admitted debt to the Trents, in the amount of $77,500.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the petitioner's motion to confirm in part, and disaffirm in part, the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Wanda Roberts Brown, admitted as Wanda Totten Roberts, is suspended from the practice of law for a period of one year, commencing November 8, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than May 8, 2015. In such application, the respondent shall furnish satisfactory proof that during this period she: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements (*see* 22 NYCRR 691.11 [c] [3]), (4) satisfied her obligation under the promissory note to the Trents in the amount of $77,500, and (5) otherwise properly conducted herself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, and until the further order of this Court, the respondent, Wanda Roberts Brown, admitted as Wanda Totten Roberts, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself

out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Wanda Roberts Brown, admitted as Wanda Totten Roberts, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10 (f).